[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 8966
The plaintiff commenced this action for dissolution of marriage by complaint dated March 26, 1996. In her prayer for relief she seeks, in addition to a dissolution, alimony and an equitable division of marital assets.
By way of answer, the defendant admitted the allegations of the complaint and filed a cross complaint seeking similar relief.
The defendant then impleaded Marie Duphiney, the plaintiff's sister, alleging that the plaintiff gifted a one-half interest in a residence owned solely by the plaintiff to said sister for no consideration; that the sister holds title to the home as a nominee for the plaintiff; that because the named parties, (husband and wife) used the residence as the family home and the defendant contributed to the increased value of the property, it should be treated as an asset of the marriage and distributed accordingly. Ms. Duphiney appeared pro-se and participated in the trial. The principal parties were represented by counsel.
The Court is cognizant of the provisions of Connecticut General Statutes §§ 46b-81 and 46b-82 and the orders entered herein are made pursuant to those statutes.
The parties intermarried on November 6, 1982 in Glastonbury, Connecticut and have lived continuously in Connecticut for longer than twelve months next preceding the filing of this complaint. There were no children issue of the marriage and neither party is or was receiving governmental assistance for their support and maintenance.
The wife is 58 years of age and the husband is 56 years of age. This was the wife's second marriage — the first having ended in divorce in 1980 (D.N. 21173, Superior Court, County of Tolland). At that time the wife and her prior husband jointly owned the property known as 21 Abbey Drive in the town of Hebron. It is the same property at issue in the present proceedings. In its memorandum of decision dated March 13, 1980, the Court found the property had a fair market value of approximately $60,000 with a mortgage of $7,500. (Thus the wife's equity share was $26,250). The Court declined to order a transfer or a sale of the house and let both parties retain their one-half interest therein. CT Page 8967
After the present parties married in November 1982, they borrowed $24,000 on a second mortgage from Helene Fishman, trustee, and used $20,000 to buy out Ms. Stamp's ex-husband who in turn conveyed his interest in the property to Ms. Stamp. Any remaining funds after closing costs were presumably spent by the present principal parties. While Visconti signed the promissory note along with Stamp, he has never had any legal title to the property so his name does not appear on the mortgage deed. It was not prudent for him to have title to real estate because there was a potential substantial IRS lien against him for unpaid taxes, but on the other hand, without his income, Stamp would not have been able to secure a mortgage on her own.
In September 1987, they borrowed an additional $35,000 from Fishman, trustee, in the same manner, for the principal purpose of making improvements to the home owned by Stamp.
Then in April 1991, they refinanced their Fishman mortgage in the same manner, this time borrowing $86,000. This money was used to retire the prior mortgages ($64,500) and to pay off credit card debt ($19,500). After closing costs there were no monies remaining from this latest mortgage.
The parties disagree as to the present fair market value of the house. Stamp estimates its value at $139,900 while Visconti's estimate is $160,000. While the property was considerably improved during the course of this marriage by addition of a dormer, siding, decks, gazebo, windows and landscaping, there is a fair amount of interior remodeling undone. Weighing the evidence, as well as the Court's own experience in evaluating real estate, the Court finds the fair market value to be $142,000. The current mortgage balance is $83,800 leaving a total equity of $58,200. Stamp's half interest equals $29,100.
The only other significant asset either party has is Stamp's 401(K) plan valued at $129,000.
The plaintiff ascribes the breakdown of the marriage to the defendant's gambling habits and stresses caused by seemingly ever increasing debt.
It would appear that the couple lived extravagantly, running up credit card debts, taking expensive vacations (for example, a trip to Italy for the wedding of Stamp's son cost approximately $8,000), and CT Page 8968 the plaintiff happily shared in the good times. They entertained often and were not conservative in their spending habits. They also made significant improvements to the home owned by Stamp as noted earlier.
Stamp, while employed throughout the marriage, worked part time only. In the early 1980's, she earned approximately $12,000 to $14,000 per year. By the late 1980's, she was earning closer to $20,000 and more recently earned approximately $22,000 to $24,000.
Visconti, a salesman, was also employed during the course of the marriage. For the most part, he earned $50,000 a year or more. He got a bi-weekly check of $1,400 and would give Stamp $1,000. He generally bought groceries out of the $400 he kept and the balance would be spent on his weekly expenses such as gasoline, lunches and restaurant expenses when he and Stamp dined out.
In short, they saved little except for Stamp's increasing her 401(K) savings, which was paid for by her employer, and the increase to the value of her house resulting from the improvements.
At the present time, Stamp earns $346 per week gross and $261 net from her part-time employment. Visconti, following heart by-pass surgery in 1996 was unemployed for a time but was later able to find employment as a commission salesman for a replacement window and siding company. He grosses approximately $800 per week and nets approximately $483. He has no benefits however and provides his own car. His employer does not provide medical insurance and currently Stamp has him covered through her employer provided plan. Neither does he have any retirement plan. Neither has any significant savings other than Stamp's 401(K).
Both parties have indicated a likelihood of future bankruptcy to get out of their financial dilemmas.
With respect to the real estate now owned by Stamp and her sister, Marie Duphiney, there was no evidence that this was a fraudulent conveyance. Stamp was entitled to make a gift of the one half interest to her sister, who has been contributing to Stamps support.
On the other hand, the majority of the money which paid off CT Page 8969 Stamp's ex husband and improved the fair market value of the house, came from Visconti. At the time of her first divorce, Stamp had an equity interest of approximately $26,250 while it is now $29,100, Visconti contributed substantiality to its increased value thereby enabling Stamp to gift $29,000 to her sister. He is equitably entitled to some repayment for his contribution.
How to best accomplish this presents some difficulty. The Court cannot strip Marie Duphiney of her half interest and if it ordered Stamp's half interest conveyed to Visconti, that would leave the defendant and Marie Duphiney as co-owners, a situation which is far less than desirable and which would probably not being closure to this dispute. The only other asset is Stamp's 401(K).
It should also be noted here, that the Court does not credit Marie Duphiney's testimony (and Stamps) that she lent $10,000 to Visconti in 1991 at the time they borrowed $86,000. Her testimony was uncorroborated and when pressed for a copy of the check, she vaguely replied that it might have been a cash payment, but it is hard to believe she would have given $10,000 to Visconti given the expressed mistrust she has for him.
This Court also is of the opinion that requiring Stamp to give Visconti a mortgage for his interest would be futile for two reasons: Stamp is in no financial position to make any payments and if she files for bankruptcy as her attorney indicated could be the case, that would likely result in Visconti getting no repayment at all.
From the time of her marriage to Visconti, Stamp's equity in the property improved from $26,250 to $58,200, an increase of $31,950. (She elected to make a gitt of one-half to her sister).
The plaintiff shall execute a qualified Domestic Relations Order (QDRO), or its equivalent, transferring to the defendant the sum of $20,000 from her 401(K) plan. (Consideration has been given to a pendente lite transfer to the husband of $5000 from this account).
The defendant's request that the parties refile their tax returns jointly for as many years as the IRS allows is denied.
Given the financial circumstances of the parties, alimony is not awarded to either party. CT Page 8970
The defendant shall have no interest in the real property owned by the plaintiff and the plaintiff shall hold the defendant harmless from any mortgage debt on said property.
Each party shall be responsible for debts shown on their respective financial affidavits and shall be responsible for their own attorney's fees.
The Court finds the marriage to be irretrievably broken down and orders it dissolved on those grounds.
The cross complaint is dismissed as moot.
As to the third party complaint, judgment shall enter in favor of Marie Duphiney.
Klaczak, J.